## Webber's Guardian v. Webber's Administrator.

### Shropshire, et al. v. Garnett.

(Decided May 11, 1917.)

### Appeals from Harrison Circuit Court.

1. Wills—Gifts—Gift of Fund.—A gift of the interest, income or product of a fund, without limit as to time, will pass the fund itself.

2. Wills—Construction—Character of Estate in Bank Stock.—Where a testator devised one-third of his estate, including his bank stock, to his widow; and further provided that the bank stock was not to be sold so long as it paid a good dividend, and in case

that it should become non-paying, or prove to be an unprofitable investment, it should be sold and the proceeds invested in some profitable investment; and, in a subsequent clause of the will the testator further declared that he wanted it distinctly understood that he did not intend to restrict his widow in the use of the proceeds of the dividends or other means acquired from her interest in his personal property, and that she might use and dispose of the same as she pleased, the widow took an absolute estate in the bank stock.

WADE H. LAIL for appellants.

T. E. KING for appellees.

OPINION OF THE COURT BY JUDGE MILLER—Affirming in each case.

At the time of his death, in 1904, W. A. Webber owned 175 shares of the capital stock of the Farmers National Bank of Cynthiana, of the par value of $50.00 per share; and, the only question presented by these two appeals is, What interest did Sally Webber, his widow, take in one third of those shares under the will of her husband?

W. A. Webber left surviving him a widow, Sally Webber; and two infant sons, William A. Webber and Daum Webber. The widow afterwards married Ashbrook Garnett.

The first literary paragraph of W. A. Webber's will reads as follows:

"I will and devise to my beloved wife, Sally H. Webber, and to my two infant sons, William A. Webber and Daum Webber, my entire estate of whatsoever nature, to-wit: one-third to my said wife, and one-third thereof to each of my said sons, consisting of land, live stock, bank stock, and cash notes and cash, with the following restrictions, to-wit: The bank stock which is in the Farmers National Bank of Cynthiana, is not to be sold as long as the same pays a good dividend as said bank has paid in the last few years, but in the event the same shall become non-paying, or prove to be an unprofitable investment, then the same shall be sold, and the proceeds invested in some profitable investment; preferring farming lands or other good bank stock."

After making several other provisions concerning his landed estate, the testator subsequently injected into the will the following provision, relating to the former devise to his widow:

"I desire that I want it distinctly understood that I do not intend to restrict my widow in the use of the proceeds of the rental of her portion of the lands, dividends or other means acquired from her interest in my personal property; in other words, it is my desire that she may use and dispose of the same as she pleases.

"The real estate hereby devised to my wife is to descend to my sons or the survivor thereof, should either of them die before my said wife without issue of his body or children; but in the event said son or sons should leave issue of his or their body, then the same is to go to such issue."

The many other provisions of the will relate principally to the testator's landed estate, and have no bearing upon the question before us.

In a settlement suit filed by W. A. Webber's administrator in 1905, the circuit court held that the provisions of the will, above quoted, gave Sally Webber an absolute title to one-third of all the personal property left by the testator, including the bank stock in question; and, under that judgment, she has ever since continued to hold 58 shares of the bank stock as her own.

By contract made February 1, 1916, Sally Webber Garnett sold the 58 shares of bank stock, which had been allotted to her, to the appellants, Shropshire and Snodgrass, for $8,700.00; but they, questioning her title thereto under the will, and refusing to accept her transfer of the stock, she instituted this action against them to recover the purchase price; and the court having given judgment against them, they prosecute this appeal.

Likewise, the guardian of the infants, William Webber and Daum Webber, prosecutes an appeal from the judgment in the settlement suit of 1905, which held that their mother took an absolute title to one-third of the bank stock and other personal property.

It will be observed that by the first paragraph of the will, above quoted, the testator devised absolutely to his wife and his sons his entire estate, of whatsoever nature, devising one-third thereof to each of them; placing, however, a restriction upon the sale of the bank stock as to its sale so long as it paid a good dividend, when measured by what it had paid in the last few preceding years; but further providing, however, that in the event the stock should become non-paying, or prove an unprofitable investment, it should be sold and the proceeds invested in

some profitable investment, farming lands, or other good bank stock, to be preferred.

Realizing, however, that some doubt might arise as to the effect of the restriction upon the sale of the bank stock, the testator, by the subsequent clause above quoted, declared that he wanted it distinctly understood that he did not restrict his wife in the use of the rents of the land or the dividends upon the stock, but that it was his desire that she might use and dispose of the same as she pleased. And, he was further careful to devise to his wife a life-estate only in the land, with remainder to his sons, or the survivor of them. There was, however, no such restriction upon the bank stock; there is no gift over of any of the personal property; there is no expressed intention that any persons, except the testator's wife and sons should, under any contingency, have any interest in the shares of personalty bequeathed to them, respectively.

So, we have an absolute bequest of bank stock without any restriction whatever upon the use of the dividends which the widow was to use and dispose of as she pleased, subject only to the restriction that she should not sell it so long as it paid a good dividend; and when sold it was to be reinvested for her use and benefit.

The rule is well established that a gift of the interest, income, or product of a fund, without limit as to time, will pass the fund itself. 40 Cyc. 1550, and the cases there cited. This rule is recognized in this state.

In Wilkinson v. Rosser's Exor., 31 Ky. L. R. 1262, 104 S. W. 1019, the testator directed that one-half of the dividends from his El Paso gold mining stock should be divided equally between the First M. E. Church, South, and the Church of the Nativity of Maysville, Kentucky; the other half to Mrs. Sarah Easton and her daughter.

In speaking of the character of the estate taken by the two churches under this devise, this court said:

"The executor is directed to pay the dividends to the life tenants and to the churches named as directed by the will. So far as the bequest of the churches is concerned, it vests in them the entire estate in the moiety of the gold mining stock bequeathed to them in the first instance. Where the income of personal property is devised to one without remainder over and without contingency, it is a gift of the property itself. There appears no reason why that part of this stock may not be delivered to these

churches upon their executing the refunding bonds required."

Again, in Hussey v. Sargent, 116 Ky. 53, the testator directed that a specified portion of the income derived from one-fifth of the residuum of his estate should be allowed to accumulate for the benefit of his grandchildren, or their heirs, and that such accumulations and income should be paid to them when his oldest granddaughter should become thirty-five years old.

In holding that the grandchildren took the principal of this one-fifth of the residuum as well as the income therefrom, this court said:

"There is another well-settled rule of construction that would give the principal of this one-fifth to the grandchildren. The testator nowhere provides that it shall go to any one else, or fall into the residue of his estate, and where the interest of a fund is bequeathed to a legatee or in trust to him, without any limitation as to the continuance, the principal will be regarded as bequeathed also. See Craft v. Snook's Ex'rs, 13 N. J. Eq. 121, 78 Am. Dec. 94; Gulick's Ex'rs. v. Gulick, 25 N. J. Eq. 324; Wainright v. Wainright, 3 Ves. Jr. 558; Hale v. Beck, 2 Eden 229. We are therefore of the opinion that testator's grandchildren took not only the income, but also the principal, of the one-fifth of the estate."

And, the rule was again fully recognized by this court, though not applied, in Watkins' Admr. v. Watkins' Exor., 120 S. W. 341. In that case the testator gave to his wife all of his moneys, cash and merchandise, to be used as thereinafter directed. He then directed the use of the interest for the wife, and, if necessary, the use of some of the capital to keep her comfortable, and gave the remainder to a grandson, at the death of the wife. While the court recognized the rule that a testamentary gift of the income of personalty passes the property itself, in the absence of anything in the will indicating a contrary intention, it held that the widow did not take an absolute title in that case, because it clearly appeared that the testator intended to give his wife only a life-estate in the personalty; and that for that reason the case did not fall within the rule.

No such qualification or restriction, however, appears from the will before us; on the contrary, there is no gift over to any one; no other beneficiary in the personalty is named; and, it plainly appears that the testator intended

that his wife should take her share of the personalty, absolutely. Under these circumstances, the restriction upon the sale of the personalty amounted only to a recommendation or expression of business judgment to his wife in the handling of her estate.

Judgment affirmed in each case.