## Bain, et al. v. Hardin, et al.

(Decided January 10, 1928.)

(Rehearing Denied, with Modification, April 24, 1928.)

### Appeal from Jefferson Circuit Court (Chancery Branch, Second Division).

1. Wills.—Language used by testator in holographic will devising rents and income from houses and realty to testator's wife after paying expenses and taxes held sufficiently ambiguous to authorize court to call to its aid, not only will itself, but also circumstances surrounding testator when he made it.

2. Wills.—Court must look to entire instrument to ascertain what estate in real estate is to be granted or devised.

3. Wills.—Unqualified devise of rents and profits of particular parcel of real estate does not pass fee-simple title, if from other express words of will or by necessary inferences from other words used a different purpose appears, but mere failure to use words of inheritance cannot be held to evidence intention to create merely life estate under Ky. Stats., sec 2342.

4. Wills.—Where, under will, testator in any event died intestate as to half of his personal estate, court could not presume that he intended by will to dispose of his entire estate.

5. Estates.—Fee in real estate carries with it complete dominion and control.

6. Wills.—Under will devising one-half of rents and income from real property to testator's wife after paying taxes and repair expenses on property, and providing that net receipts and income should be equally divided between wife and children or their heirs, and that no invoice should be made of testator's property, as he wished all to be peacefully settled between his wife and children or their heirs, omission of words of inheritance together with other words used and necessary inference therefrom held to show testator's intention to create and devise to his wife merely an estate for life in half of his real estate, under Ky. Stats., sec 2342.

SELLIGMAN & SELLIGMAN and NORTON L. GOLDSMITH for appellants.

GILBERT BURNETT and WINFIELD L. WATERS for appellees.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE— Reversing.

The determination of the questions presented by this appeal involves a construction of the will of J. F. M. Lee, which was probated by the Jefferson county court on November 14, 1912. It may be stated at the outset that the language used by testator to manifest his intention is sufficiently ambiguous to authorize the court to

call to its aid not only the will itself but also the circumstances surrounding testator when he made it. Testator wrote his own will. He was not a lawyer, nor was he a well-educated man. A photostatic copy of his holographic will is in the record, and its literary and grammatical imperfections and the number of misspelled words speak for themselves. The extent of his personal estate does not appear and is immaterial. He owned 13 lots or parcels of real estate in Louisville, Ky., each improved with a frame dwelling house. None of this property came to him through his second wife. Though it was a holographic will, testator deemed it necessary to have it witnessed, and it was signed by two of his friends as witnesses. When he made this will testator was living with his second wife by whom he had no children. She was of an age that there was no probability of other children. He had five children by a former wife, and his wife had a son 30 years of age by a former husband. Under these circumstances, to evidence his intention as to how his estate should be disposed of at his death, testator wrote as follows, omitting the portions not calculated to shed light on the controversy here presented:

"1st. I desire all my Doctor Bills (if any) and all expenses incident to my Death and Burrial expenses to First be paid out of my personal property (I do not Owe any debts and no one has any claims or Notes against me). My accounts on others will be found in my Act book B. any notes I may have is in my Large Portfolio in my Desk.

"2nd. To my Dear Loving Wife I wish her to have what the Laws of Kentucky give her of my personal property of all kinds.

"3rd. I, also desire My Dear Wife to receive one-half of the Rents and Income from all Houses and Realty that I have in Jefferson County, Kentucky, or that I may have at my death in any other place. Taxes and repair expenses on houses and lands to *first* be paid out of Rents and Incomes, from said Houses and Lands. The *Nett* receipts and incomes to be *equally* divided between my wife and my children or their heirs.

"4th. I desire that no invoice be made of my property Real or Personal, as I wish all to be peacefully settled, between my wife and my children or their heirs.

"5th. Should any of my heirs take any exception to this desposition of my estate such heir or heirs is to receive only the sum of Five Dollars as their share or interest in my estate.

"6th. I appoint my Dear Wife Mary F. Lee, my executor without bond of this my Last Will and Testament. In the blessed name of Jesus I ask God's Blessing to rest on *all* that may be interested in this my last will." (The words appearing underscored were underscored by testator.)

After testator's death his children by his first wife and his surviving widow, his second wife, enjoyed the real estate which he died possessed of without any character of controversy, she receiving half and they half of the income from it so long as she lived. After her death his children took possession of all of the real estate, believing that under his will their stepmother had taken only an estate for life in half of it, and they continued to occupy and enjoy all of it for approximately ten years. Then appellee, Henry F. Hardin, her child by her first husband, conceived the idea that under the will above his mother took the fee-simple title of an undivided half interest in all of testator's real estate. He had been sole devisee under his mother's will. It may be said that nothing in her will indicated that she thought that she had taken any interest in her husband's real estate which she could pass on to her son. He thereupon instituted this action to recover an undivided half interest in certain of testator's real estate. Before that time testator's children had divided his real estate and appellant Ada L. Bain, one of them, had taken complete title of the three parcels of real estate involved herein as her share thereof.

The issue drawn by the pleadings, briefly stated, is: Did testator's widow take the fee-simple title of an undivided half interest in all of his real estate under the will above, as appellee contends, or did she merely take an estate for life therein, as appellant contends? The chancellor concluded and adjudged that she took the title in fee. The judgment of the chancellor was founded upon the principle that a devise of the rents and profits of land is a devise of the land itself, as appears from this excerpt from his opinion on file herein:

"From the time when, more than five hundred years ago, Sir Edward Coke asked his famous, rhe-

torical question, 'For what is the land but the profits thereof?' down to the declaration of the Court of Appeals of Kentucky on November 19, 1926, in Lossie v. Central Trust Co., 219 Ky. 1, 292 S. W. 338, it has been uniformly held by the courts of England and of this country that a grant of the rents, issues and profits of land is a grant of the land itself.''

The correctness of the principle here announced cannot be questioned, but whether the devise be of the land itself or of the rents and profits thereof we must look to the entire instrument to ascertain what estate in the real estate is thereby granted or devised. Guided by section 2342, Kentucky Statutes, which reads, ''Unless a different purpose appear by express words or necessary inference, every estate in land created by deed or will, without words of inheritance, shall be deemed a fee simple or such other estate as the grantor or testator had power to dispose of,'' the unqualified devise of the rents and profits of a particular parcel of real estate by A. to B. must be held to pass to B. the fee-simple title thereof; but if from other express words or by necessary inference from other words used a different purpose appears, then the estate which passes will be held to be whatever estate the express words or necessary inference demonstrate the testator intended should pass. Mere failure to use words of inheritance cannot be held to evidence the intention to create merely a life estate.

Reviewing this court's opinions construing deeds and wills which have created estates in real estate by granting or devising the rents and profits thereof, we find no case in which those particular words have been conclusive of the question.

In Lossie v. Central Trust Co. of Owensboro, 219 Ky. 1, 292 S. W. 338, the latest opinion of this court dealing with that expression, the language used by the testator was:

''My sister is to use all rents and profits for her own benefit.''

That was said with reference to all of testator's real estate. From what was there said, together with the other things said by testator in his will, the court concluded that the sister took only an estate for life in the real estate.

In Mayes v. Karn et al., 115 Ky. 264, 72 S. W. 1111, the language was:

> "It is my will and desire that my wife and children shall be supported from the proceeds or income of my estate, and that the sum of $1,145.00 which I have in money shall be invested in real estate for the benefit of my wife and children."

Governed largely by a further provision of the will, "That my wife shall not have the power of disposing of any portion of my estate," it was held that the wife took only an estate for life in one-half of the real estate.

In Williamson, etc., v. Williamson, etc., 18 B. Mon. 329, the language was:

> "The tracts or lots which I give to my daughters, they are to have, hold, and enjoy the rents and profits of the same for their separate use during their natural lives, and at their death the title of the same to vest in their heirs in fee forever."

The court, of course, encountered no difficulty there in concluding that the daughters took an estate for life.

In Bowles v. Winchester, etc., 13 Bush, 1, testator devised to his daughter, Margaretta, "The rents and profits, during her natural life, of nine three-story brick houses in the city of Louisville." The court readily concluded that Margaretta took an estate for life in these nine three-story brick houses.

In Ball, etc., v. Hancock's Adm'r, etc., 82 Ky. 107, the real estate was conveyed to one Cosby in trust for Marion Sophia, with the right to her and her husband "to take the profits thereof to the use of the said Marion Sophia and her heirs." Other provisions of the deed not necessary here to quote, together with the quoted statement, were such that the court said of it:

> "The deed is so strictly guarded in its terms that her husband had no power of control to any extent even over the rents and profits, and in every feature of it is to be seen the purpose of granting to her a fee-simple estate, although these terms are not directly used. . . . This unlimited right to the profits conferred upon her heirs as well as herself, if nothing else appeared in the deed restricting it, would amount to a grant of the land itself."

It would have been appropriate to say that it amounted to a grant of the land itself in fee-simple title.

From the infrequent use of this method of granting or devising real estate, and from the fact, as the review of our own opinions has shown, that when resorted to other language has uniformly been used to make clear whether an estate for life or title in fee simple was intended to be passed, it is to be doubted if the average man is familiar with the principle of law founded upon the statement of Lord Coke, made some 500 years ago. The quotation from Coke found in the opinion of the chancellor is only part of a sentence, which in full reads:

"If a man seised of lands in fee by his deed granteth to another the profit of those lands, to have and to hold to him and his heires, and maketh livery secundum forman chartae, the whole land itselfe doth passe; for what is the land but the profits thereof?" Coke upon Littleton, Lib. 1, Cap. 1, sec. 1, p. 4b.

It is to be observed from the testator's will that in any event he died intestate as to half of his personal estate. Hence we cannot indulge the presumption that he intended by the will to dispose of his entire estate. It is to be understood from what he said in the second and third clauses of his will that the only particular in which he desired to change the laws of descent and distribution was in so far as his wife was concerned. So far as his children were concerned he would make no change; that is, none of them were to be preferred and none disinherited. When the second and third clauses of the will are read together, it is manifest that testator was satisfied with the portion of his personal estate which the law would allow to his surviving widow, but felt that it did not provide enough for her out of his real estate. To his practical way of thinking about it the estate for life which the law would have allowed to his wife in one-third of his real estate, consisting of houses and lots producing income by way of money rentals, meant that she would receive one-third of the rentals after the taxes and costs of repairs had been paid. When he willed that taxes and cost of repairs should first be paid and that then his wife should receive one-half of the remaining part of the rentals and income from his real estate, it manifestly was his way of expressing the intention that she take the same estate in one-half of his real estate that the law would allow her in one-third of it; that is, a life estate.

That his wife should receive nothing until taxes and cost of repairs had been paid seems expressly to forbid the understanding that testator's intention was that his surviving widow should take the fee-simple title of half of his real estate. The fee in real estate carries with it complete dominion and control. One who possesses real estate in fee-simple title may permit its improvements to fall into utter disrepair, even to the extent that they cease to be. This testator did not devise to his surviving widow that character of estate in his real estate. He expressly provided that repairs be made and paid for and that such portion of the rents from it as she should receive could come to her only after repairs had been made and paid for. The reference made to his children in the third clause of his will perhaps was not so much testator's devise of a part of his estate to them as it was his recognition that under the law they would take the portion of the income from his estate not already disposed of.

It is argued that if by the third clause testator had intended that his wife should receive one-half of the rents and profits from his real estate merely during her life instead of one-third as the law allows, the difference would have been too slight to cause testator to apprehend that any of his children would be dissatisfied with the provisions of the will, or to insert clause 5, which reads:

"Should any of my heirs take any exception to this disposition of my estate, such heir or heirs is to receive only the sum of $5.00 as their share or interest in my estate."

If testator used the word "heirs" here to express the same meaning as if he had used the word "devisees," then clause 5 refers to both the wife and children. Understanding testator to have used it to refer to his children only, which is probably true, we find additional evidence that the reference to his children in the third clause of his will was not so much testator's attempt to devise any of his estate to them as it was his recognition that they would take under the law and share equally all of his property which he did not devise by his will to his wife. He called them his "heirs," thus indicating his understanding that they would take under the law. Stepchildren frequently feel and give voice to the opinion that the stepmother should receive no part of their father's estate, and testator by clause 5 of his will mani-

festly intended to prevent the discord arising from such a situation. By clause 4 testator seems clearly to have given us to understand that he was providing an estate for life only in his wife. He said that he desired "all" to be peacefully settled between his "wife" on the one hand, and his "children or their heirs" on the other. Thus he evidenced his intention that the death of his wife would terminate the estate he had willed to her, but that upon the death of any of his children their heirs would succeed them.

Testator's then wife was not the mother of his children. Her child, a son, was 30 years of age. He had five children of his own. Naturally he wished to provide for his wife so long as she lived. He was under no obligation of any kind to provide for her son, a stranger to his blood, at the expense of his own children. He knew that if his real estate was willed to his wife in fee-simple title it meant that her son would succeed to it and his children would be deprived of it at her death. Naturally he desired his own children to receive his estate after his obligation to his wife had been satisfied.

In view of these facts and from the express words used and the necessary inferences therefrom, this court has concluded that the different purpose appears than that testator intended to create and devise to his wife the fee estate in half of his real estate. We conclude that the omission of the words of inheritance together with the other words used and the necessary inference from them manifest testator's intention to create and devise to his wife merely an estate for life in half of his real estate.

Hence, the judgment herein is reversed and cause remanded for judgment in conformity herewith.