## Oliver et al. v. Oliver et al.

March 7, 1941.

Orie S. Ware and William O. Ware for appellants.
Vest & Vest for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER— Reversing.

Mrs. Louisa Oliver, then a resident of Kenton county, died on June 22, 1912, the owner of a tract of land with some improvements. In April of that year she executed a will which in pertinent part provided:

"I want Homer to have the house yard and garden and a lot on the east side of the road leading to the barn and I want Homer to have all of my land west side of the house over to his line running back and including the barn and all the buildings thereon during his life time and I want the remainder of my land divided equally between my other two children, Perry and Laura. I want Perry to have the upper end next to pond and Laura the lower end. and I want my bank account after my death and funeral expenses I want the remainder to be divided equally between my three children."

Interested parties sought to have their rights determined under our Declaratory Judgment Act. Testatrix left surviving the children named in the will; Laura died intestate in 1936, leaving four children, who with Perry, widower, are appellants.

Homer died in 1939, leaving surviving his widow, and a son, Malcolm. Homer up to his death held and enjoyed the use of the curtilage, the portion devised to him.

A stipulation recites that the land owned by testatrix consisted of 14¾ acres with improvements, located in a rural section, and that at the time of death of testatrix she and Homer occupied the premises, the latter owning land adjoining. It was agreed that the land at the time of death of testatrix was worth $35 or $40 per acre, and with improvements, approximately $1,500.

The stipulation states the issues in this wise: Appellants contend that the devise to Homer gave him a life estate in all the property therein described, and that the language "And I want the remainder of my land divided equally between my other children Perry and Laura" was a devise of the remainder after the life estate to Perry and the children of Laura.

Appellees contended that the devise to Homer of the

house, yard, garden and lot was in fee, and his heirs are now the owners in fee; admitting that the devise of the land on the west side of the house was for life, but contending that the clause "I want the remainder of my land divided equally" between the other children is a devise of the remainder of the land not devised to Homer in fee, and not to a remainder of all the land after cessation of Homer's life estate.

The chancellor decreed that the devise to Homer of parcels on the east side of the road vested in him title fee simple; that land on the west side of the house vested in Homer for life. Further that Perry, Malcolm, and Laura's children are the owners of that latter portion and entitled to one third each in fee, the remainder therein being undevised.

The court correctly construed the will insofar as it related to the land on the west side of the road, but appellants insist that the devise to Homer, in its entirety, was of a life interest, and there being no devise over, upon Homer's death, the whole of the estate passed to Perry and Laura's children, as remainder of her estate under the will. Alternatively, that if testatrix died intestate as to the remainder only of Homer's life estate, then such remainder vested in fee in Malcolm, Perry and Laura's children. We are persuaded that the alternative proposition is the correct one, and further that Homer took a life estate in the entire devise to him.

Both parties quite agree on the established rules adopted and applied by this and other courts in the construction of wills. These are collated in Hopson's Trustee v. Hopson, 282 Ky. 181, 183, 138 S. W. (2d) 365. In reference to the discarding of techncal rules see Lightfoot v. Beard, 230 Ky. 488, 20 S. W. (2d) 90.

In briefs it appears that Mrs. Oliver's will was written at her request by her attending physician, who undoubtedly knew more about materia medica, than will drafting. In the absence of a showing to the contrary we must assume that testatrix was a rational person; knew the extent of her estate, objects of her bounties, and in what manner she wanted to dispose of it.

Perhaps the only word or phrase in her will which might call for technical construction is "remainder" as used in two places; in the first instance, "the remainder

of my land" could by no reasonable rule have application to other than the portion of the land after the devise to Homer, and not to any part of his estate unconsumed or undisposed of, which might ripen into title upon some happening. As we look to the entire will it is obvious that testatrix intended that the "balance," the "rest" or "portion" remaining after the devise to Homer should be divided into a lower and upper half, between Perry and Laura in fee.

There is much argument in briefs pro and con as to the implied intention of Mrs. Oliver to treat her children equally. Appellants insist that certain words indicate an equalizing intention. Appellee insists otherwise. A reading of the will might support either of the propositions. We assume, in the absence of showing to the contrary, that Mrs. Oliver had no idea of any decided nonpreference. One rule of construction is that a will should be construed as to produce equality, except when unequal division is clearly called for, and here though there was a clear intention to limit the devise to Homer, this does not per se produce inequality.

It would not be difficult, assisted by the meager facts set up in the stipulation, to reach the conclusion that Mrs. Oliver's notion of equality would be realized by giving Homer a life estate in the entire devise to him. He was living in her home at the time of her death. She left Homer what appears to be about one third of the entire tract with the house and barn, together with a lot and garden spot. The portions devised to the other children were apparently unimproved.

It is said by appellees, that when the will was written, testatrix could not divine how long Homer might live. This is true, but she intended that he should enjoy the benefits as long as he might live, and from the pleadings it appears he held possession until his death in 1939. It may also be reasonably inferred that had she intended to devise any portion of the land to Homer in fee, it would have been quite natural to have given him such portion as joined his own land.

Some argument is indulged as to the grammatical construction of the will, which as will be noted is lacking in punctuation save in three instances. The chancellor expressed the opinion that the word "and" was used in the will in a disjunctive rather than in its usual and

ordinary conjunctive sense, because repeated with the words "I want" with reference to the devise to Perry and Laura. The word "and" is ordinarily used in the sense of conjunction, as expressing a general relation or connection; a participation or accompaniment in sequence, and we must give it its ordinary meaning.

No importance need be given the repetition or the repeated use of the words "I want" in connection with "and." From a grammatical standpoint it is only necessary insofar as the argument here is presented to give meaning to the coordinate conjunction "and," which in law has the same meaning it carries in common parlance, "having no inherent meaning" standing alone, but deriving its force from what comes before and after. "In its conjunctive sense it is used to conjoin a word with a word, a clause with a clause, or sentence with a sentence, expressing the relation of addition or connection, and signifying that something is to follow in addition to that which precedes." Its use implies "that the connected elements must be grammatically coordinate, as for example where the elements preceding and succeeding the use of the words refer to the same subject matter: * * * While it is said that there is no exact synonym of the word in English, it has been defined to mean 'along with,' 'also,' 'and also,' 'as well as,' 'besides,' 'together with.' " 3 C. J. S., And, 1067.

Without studied attempt to grasp the intention of Mrs. Oliver as to attaining equality or working inequality, we are of the opinion that the proper construction of the will, and which will also express intention, may be achieved by merely striking from that part which devised to Homer the words used the second time, "I want Homer to have." The meaning then becomes clear and such construction leads to the conclusion that the entire devise to Homer was for his life only and it is so held, thus reversing the judgment for the entry of one consistent with this opinion.

Judgment reversed.