## Felty v. Easterling et al.

March 28, 1941.

H. R. Wilhoit for appellant.

G. W. E. Wolfford, Thomas S. Yates, D. V. Kibbey and John R. McGill for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

T. B. Felty died testate in December, 1932, while a citizen and resident of Carter county, Kentucky. On February 23, 1930, he executed his will, which was duly probated in the county court of his residence after his death, and his son, the appellant and one of the defendants below, Roy Felty, was appointed and qualified as executor of the estate. Testator was survived by his widow and six adult children, and also some grandchildren, sons and daughters of two deceased children. Ac-

cordingly, there were eight divisions of his estate. He directed in the first item of his will that his funeral expenses and debts be first paid, and in the second item he made a devise to his wife, who, however, predeceased him. In the third item he gave to his son, Roy Felty, a house and lot adjoining his residence in Grayson, Kentucky, which he purchased from one Emmett McClave and wife on September 27, 1928. In order to raise funds for the payment of the consideration therefor he borrowed from the Commercial Bank of Grayson the sum of $1,200, and in the McClave deed to him there was retained a lien in favor of the bank to secure his note to it for that amount. Prior to that transaction testator had sold to James Hall a piece of real estate, taking Hall's note for $860 as a part of the consideration, and he also pledged that note to the bank as part security for the note of $1,200 he had executed to it to obtain the necessary funds to pay McClave for the property bought from him. In making the pledge to the bank of the Hall note, he authorized and empowered the pledgee to collect it and apply the proceeds on the $1,200 note in pro tanto extinguishment of that debt. At the time of testator's death the bank had collected from Hall enough to reduce his note to $579, and the total amount of Felty's note to the bank, including all interest due, was then reduced to the amount of $1,000, which was secured by a lien on the McClave property, and by the balance due on the Hall note. In Item III of the testator's will, in which he devised the McClave property to his son, Roy, it is recited that he (Roy Felty) had paid a part of the $1,000 cash payment made for the McClave property, and that he had "cared for my wife and me in our declining years." Therefore, testator said in that item of his will that "this devise to my son Roy is to be executed regardless of the size or amount of the residue of my estate, and he is to receive same without being required to contribute any amount to the payment of my debts and funeral expenses; in case any encumbrances of indebtedness exist against said property at my decease same is to be assumed by my son Roy."

In Item IV of the will (its residuary clause) testator devised all the rest of his property to be equally divided among his remaining seven children, and the children of deceased ones per stirpes, but in which he expressly stated: "Before this item is carried out in full I

direct that the preceding items of this will be first fulfilled."

This equity action was filed in the Carter circuit court by some of the heirs against the others seeking an interpretation of the will and a settlement of the estate, and in which but one legal question is raised, and which is: Whether or not Roy Felty under the terms of his father's will should account to the estate (for the benefit of the residuary devisees) for the amount of the balance of $579 due on the Hall note at the time of testator's death? It is insisted by the residuary devisees that by the last sentence of Item III of the will, in which the devise of the McClave property was made to Roy Felty, the latter should account to the estate for the balance due on the Hall note. See excerpt supra. However, immediately preceding that sentence—and as a part of the same item of the will—testator said: "And he (Roy) is to receive same (McClave property) without being required to contribute any amount to the payment of my debts and funeral expenses." It is, therefore, insisted in behalf of testator's son Roy that it was his (testator's) intention that his $1,200 note to the bank secured by a lien upon the McClave property should not be charged to his son Roy to the full amount of that lien, but only that his son should assume and pay the balance of that note after crediting it with all collections made by the bank on the Hall note—likewise pledged to secure the same indebtedness—and, since the bank has collected all of the Hall note and applied it as a credit on its $1,200 note executed by the testator, his son Roy should account only for the balance of the bank note under the inserted excerpt from the will supra, obligating his son to assume such balance. The trial court to whom the legal issues were submitted adjudged that Roy Felty should account to the estate for the balance of $579 due on the Hall note at the testator's death, and complaining of that judgment, Roy Felty, individually and as executor of his father's will, prosecutes this appeal.

Briefs of counsel are to a considerable extent devoted to the discussion of the abstract questions of the powers and authority conferred upon pledgees of personal property, the law with reference to the primary fund for the payment of debts of decedent, and other well settled principles of the law. But the question for

determination here is one of ascertaining the intent of the testator as expressed in his will. The rule is too well settled to require a listing of authorities and cases that such intent is to be gathered from the entire contents of the will, and when it is so ascertained it will be so administered, although it might be in conflict with general rules applicable to such abstract questions as are above referred to; provided always that the intent so gathered is not in conflict with any principle of law. Guided by that well settled rule, let's examine all material parts of the involved will in order to discover the testator's intention as expressed by him therein, and when done to then apply that intention to the solution of the sole question involved.

At the threshold it should be remembered that an important key for the unlocking of the chamber containing a testator's intention is for the court to place itself in his situation at the time he executed the will in contest. T. B. Felty, the testator in this case, recited in his will a clear purpose to favor his son Roy because of two reasons, i. e., first, that the latter had assisted in making the cash payment on the McClave property which was devised to him, and secondly, that he had cared for testator and his wife "in our declining years." Therefore, he declared that his devise to Roy should be executed "regardless of the size or amount of the residue of my estate, and he is to receive same without being required to contribute any amount to the payment of my debts and funeral expenses." Testator owed at the time of his death no debt, except that due to the bank to which he had executed his $1,200 note to secure which the Hall note was also pledged by him with power and authority expressly given to the pledgee to collect it and appropriate the proceeds as a credit on his bank note. A pertinent inquiry, therefore, is: What encumbrance—or more appropriately speaking, what was the amount of the encumbrance—on the McClave property did testator intend for his son Roy to assume and pay when he required in his will that his son make such payment? Was it the entire $1,000 balance due on the $1,200 note at testator's death, or was it the balance of testator's note to the bank after crediting it with all collections from Hall in payment of the latter's debt?

The record discloses that if testator's son Roy should be required to account for the entire $1,000 bal-

ance due on testator's note to the bank, he would receive practically nothing as his portion of his father's estate; whilst the other heirs would receive anywhere between three and five hundred dollars each; thus, not only destroying the manifest intention of the testator to prefer his son Roy, but likewise practically disinheriting him, and which itself is a potent fact militating against the interpretation made by the trial court. Pursuing the question still further, it will be seen that the testator before his death had arranged and fixed a status of both his debt to the bank, and also that of the Hall indebtedness to him. That status as it related to his note to the bank was that it should be credited with the collected proceeds of the Hall note as and when they might be made by the bank, which it was expressly authorized to do so, and which was a devotion of all collected proceeds of that note to the pro tanto extinguishment of testator's note to the bank; whilst the status of the Hall note was, to the extent of collections made on it appropriated to the same purpose. With arrangements thus fixed by testator himself it is quite clear to our minds that he intended and purposed that all collections from the Hall note by the bank (either before or following his death) should go to the reduction of the encumbrance on the McClave property, which he devised to his son Roy, and that the latter should be required to pay whatever balance might be due on testator's note to the bank after applying thereto all collected proceeds made on the Hall note, which, as we have seen, was eventually paid in full.

We, therefore, conclude that the will of testator clearly manifests an intention on his part to charge his son Roy with the obligation to assume the balance of the encumbrance on the property devised to him after its reduction by all proceeds collected from the Hall note, which latter testator had already expressly devoted as a pro tanto extinguishment of that encumbrance to the extent of all collections the bank might obtain on it.

Wherefore, the judgment is reversed, with directions to set it aside and to render one in accordance with the principles of this opinion.