# Shedd's Adm'r v. Gayle et al.

Nov. 28, 1941.

Leslie Morris and Marion Rider for appellant.

Louis Cox for appellee Geo. Gayle.

Clyde Reed for appellee Mary B. Borders.

John Skaggs for appellee James Garnett.

OPINION OF THE COURT BY JUDGE FULTON—Affirming.

Mrs. Eva Macklin Shedd died, testate, a resident of Franklin County in 1937, leaving real and personal property of the approximate value of $50,000. The first and seventh clauses of her will, which we are called on to construe, were as follows:

"1. I appoint my sister, Ruby Macklin as Executrix under this my will and direct that no security be required of her and I do hereby confer upon her the authority and power to sell and convey any of said property both real and personal at any time she may think best. The proceeds from said sale or sales to be re-invested for the trust purposes herein provided. This same authority and power of sale of said property real and personal is also granted to any trustee who may be appointed to carry out the provisions of my will.

"VII. To my sister, Ruby Macklin, I leave the rest of my estate both real and personal for her life time. She having shown untiring devotion all her life and it is only just that she should have and enjoy what is mine while she lives, at her death everything I have both real and personal, the interest from which shall be divided, equally between any grand nieces and nephews, then living."

By the third, fourth and fifth clauses of her will she bequeathed $5 to a nephew, George M. Gayle, $100 to a niece, Mary B. Borders, and $5 to a nephew, Robert Alexander Gayle.

The life tenant, Ruby Macklin, qualified as executrix and acted as such until her death in the year 1940. After the death of Miss Macklin the appellant, Farmers Bank and Capital Trust Company, qualified as administrator with the will annexed and filed this action for a construction of the will.

At the time of the death of the testatrix, as well as at the time of the death of the life tenant, the testatrix left surviving two nephews, the appellees, George M. Gayle and Robert Alexander Gayle, and one niece, the appellee, Mary B. Borders; three grandnieces, the appellees, Martha Gayle and Garnett Gayle, infant children of Robert Alexander Gayle, and Ann Borders,

child of Mary B. Borders, and one grandnephew, the appellee, William Borders, child of Mary B. Borders.

The chancellor adjudged that the devise contained in the seventh clause of the will was a fee-simple devise in remainder to the three grandnieces and the grandnephew of the testatrix and that no trust was established or created by the will for or on behalf of any person.

On this appeal it is contended by the appellees, George M. Gayle and Robert Gayle, nephews of testatrix, 1) that by the language of the seventh clause, "divided equally between my grand nieces and nephews," the testatrix intended that her estate, after the death of the life tenant, should pass to the three grandnieces, Martha Gayle, Garnett Gayle and Ann Borders, and the two nephews, George M. Gayle and Robert Alexander Gayle, and 2) that if such language be construed as passing the estate to the grand nieces and grand nephew, they take only the interest or income from the estate for life and the remainder passes to the appellees, George M. Gayle, Robert Alexander Gayle and Mary B. Borders, the surviving heirs at law of the testatrix, as undevised property. In addition to these contentions the appellant raises the question whether a trust was created by the first clause of the will and, if so, what is the nature of the trust.

The cardinal principle in construing a will is, of course, to arrive at the intention of the testator. We have no doubt that by the language of the seventh clause of the will "divided equally between any grand nieces and nephews then living" the testatrix intended and meant the grandnieces and grandnephews living at the death of the life tenant—in short, that she intended the word "grand" to modify both the words "nieces" and "nephews." In arriving at this conclusion we exercise our common knowledge which tells us that the ordinary person in speaking of writing of his grandnieces and grandnephews seldom repeats the word "grand" but uses it the one time as modifying both "nieces" and "nephews."

In Tuttle v. Steele et al., 281 Ky. 218, 135 S. W. (2d) 436, 438, a will containing language almost identical with the will here involved was before us for construction. The language of that will was:

"I give to my wife my one half undivided interest

in the farm owned by John W. Tuttle & myself on the Gay and Evans Pike for her life time she is to keep in high state of cultivation and cannot sell it at her death it is to go to my *great-neices and nephews* including any that may yet be born.''

In determining the character of estate devised by the quoted language we said:

"The devise in question is clearly a fee simple in remainder to testator's great-nieces and great-nephews after the death of the testator's wife, subject to open up and let in great-nieces and great-nephews born after testator's death."

It is argued by the appellees seeking a reversal of the judgment that this opinion is dictum to the extent that it decided that the title was vested in the testatrix' great-nieces and great-nephews because the question whether the word "great" modified both the words "nieces" and "nephews" was neither raised by the parties nor discussed by the court. It will be observed, however, that it was necessary for the court to determine what class of persons were vested with the title and in doing so we did determine that it was vested in great-nephews as well as great-nieces. It is clear, therefore, that the decision in that case on this point is not dictum. It must be admitted that the case is not strong, direct authority because of its lack of discussion of the question but that very lack of discussion is illustrative of the utter naturalness of the meaning ascribed by the court to the words "great-nieces and nephews" and thus that decision is rendered rather persausive. In construing a will the usual, ordinary and natural meaning is given to words and phrases unless it appears from the context of the will as a whole that they were used in a technical sense or unless other portions of the will indicate clearly that they were intended to have a different meaning from that ordinarily employed. There is nothing in this will to indicate that the testatrix intended that the word "grand" should modify only the word "nieces" but, on the contrary, the fact that she had, in other portions of the will, made specific bequests to her nephews of all that portion of her estate which she, apparently, wanted them to have indicates that she intended that the remainder should go to her grandnephews as well as grandnieces living at the death of the life tenant. It is

our conclusion that the chancellor correctly determined this question.

It is equally clear that the chancellor correctly adjudged that the fee simple, rather than the interest or income from the estate, was devised to the grandnieces and grandnephew. By virtue of Kentucky Statutes, Section 2342, the unqualified devise of the rents and profits of real estate passes the fee-simple title thereof. Bain et al. v. Hardin et al., 223 Ky. 792, 4 S. W. (2d) 745, 746. And, under a bequest or gift of the interest or income of a fund without any limitation as to time, the principal will be regarded as bequeathed also. Wilkinson v. Rosser's Ex'r, 104 S. W. 1019, 31 Ky. Law Rep. 1262; Hussey v. Sargent, 116 Ky. 53, 75 S. W. 211; Webber's Gdn. v. Webber's Adm'r, 175 Ky. 525, 194 S. W. 805. It may well be doubted that the testatrix by the use of the words, "the interest from which shall be divided," in the seventh clause of the will was referring to income but, if she was, then under the foregoing authorities the grandnieces and grandnephew were vested with an absolute estate since no limitation or contingency was placed on the receipt of the income and there was no devise over. Further support for this conclusion is found in the well-known rule that a construction is favored that will result in testacy rather than in intestacy.

We think it is equally clear that no trust was created or intended by the language of the first clause. It seems obvious that in referring to the "trust purposes" provided in the will the testatrix meant the life estate created in Miss Macklin and that when property was sold by her the proceeds should be re-invested to be held for her use. In any event, even if the testatrix intended to create a trust, the one created by her would be what is known as a passive, dry or naked trust, since no duties or limitations were imposed on a trustee, and such a trust is universally regarded as vesting absolute title. Volume 1, Bogert on Trusts and Trustees, Sections 206 and 207.

Judgment affirmed.