JUDGE PETERS
delivered the opinion oe the court.
Joseph Brown, a citizen of Nelson County, died testate at his place of residence, and his will having been properly probated, his executor brought this suit in equity to have the will construed, and for the advice and direction of the chancellor in its execution.
The chief difficulty arises on the 25th clause, which is in the following language: “The rest and residue of my estate I will and bequeath to the descendants of my three uncles, Benjamin Brown, William Brown, and Thomas Brown. My three uncles above named are all dead, and their children or descendants are unknown to me, at least some of them. My desire is. that this bequest shall go to such of their children as are living; and where a child *650 of either has died leaving children, the children of said deceased child shall take such part as their parent would take if living.”
It appears that one of the uncles named left three children, one left four, and the other seven. The children of the uncle leaving the three only contend that the devisees under this residuary clause take per stirpes, and that the descendants or children of each uncle take one third of the estate as a class; while those of the uncle leaving the greatest number claim that the devisees take per capita, and as the whole number of children was fourteen, that the residuary estate should be divided into fourteen equal parts, and be thus distributed. The court below adjudged that these devisees took per stirpes, and that judgment is complained of.
There is not in the extract quoted from the will any expressed intention of making any difference among these beneficiaries of the testator, nor is there anything in the context indicating such intention. He says these devisees, or some of them, are unknown to him; this he states as a reason doubtless for not individualizing them by name in his will. But if they had been all living and known to him, and he had said the rest and residue of my estate I give to the following persons, naming them all, and concluded by saying who are the children “of my three uncles above named,” there could be no doubt then that each person named would have taken an equal share, or that this residual would have been divided equally among those persons. Such language would have been susceptible of one construction, and the meaning could not have been misunderstood, and there would have been then no necessity to have named his uncles. The testator, it is most probable, would not have referred to them. But some were unknown to him, and some were *651 doubtless dead; and in that condition of things he adopted the best means in his power of identifying the persons who were to be the objects of his bounty by designating them as the children and descendants of his three uncles who are known to him. The testator had no children, no brother, no sister: those persons were his nearest kindred, and all related to him in the same degree; so that it is to be presumed that the same reason which influenced him to provide for them would induce him to make that provision equal. He gave specific legacies to quite a number of persons in separate clauses of his will, varying in amounts, who were not of his own blood; but when he comes to provide for his own kindred he embraces them all in one comprehensive clause, designating neither of them by name, but describing them as the children and descendants of certain named persons, whereby he placed them on a perfect equality. This, it seems to us, is the rational as well as the literal construction of the clause of the will under consideration, and in giving to it a different construction the court below erred. The statute of descents affords no aid in giving construction to this will. The testator fixed the time for the payment of the specific legacies immediately after his death. He in effect directed them to be paid in bonds, notes, etc., on hand, which were to be received by these legatees, in satisfaction of their legacies, at their nominal value, with the accruing interest from his death, and they are therefore not controlled by section 2, article 2, chapter 46, Revised Statutes.
The delivery of the bonds by the executor to the officers of the Presbyteiian Church was in satisfaction of the legacy to the church, and was accepted as such by said officers. It does not claim in the answer that the bonds received by it should be brought up to par value, *652 but only insisted that it was entitled to the interest from the death of testator, which it got, and the pleadings of the church would not have authorized any other relief. As to the church therefore the judgment is affirmed.
The executor qualified and undertook the execution of the will, knowing that his compensation was fixed and limited to the sum therein named. His protest could have no effect after he qualified. The only way to make it available would have been to refuse to qualify. But having qualified, he must accept the provision made for him in the will, and if he is now not content with it the law can afford him no remedy. The allowance to his counsel seems from the evidence to be reasonable, and the same was therefore properly allowed. But the court below erred in the mode adopted for the distribution of the residuary fund among the residuary devisees, and for that error alone the judgment is reversed, and the cause is remanded, with directions to distribute the residuary fund as herein intimated, and for further proceedings.