# Bean et al. v. Bean et al.

(Decided Dec. 17, 1937.)

ANDREW W. NICHOLS for appellants.
ERNEST N. FULTON for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE RATLIFF—
Affirming.

Rebecca Duvall died testate in February, 1924, a citizen and resident of Nelson county, Ky. By the first clause of her will she directed that her just debts be paid; in the second clause she appointed her nephew, McCormick Brashear, executor and trustee of her will; and in clause 3 she directed that, in the event that McCormick fails to qualify as executor and trustee, the Fidelity & Columbia Trust Company of Louisville, Ky., be permitted to qualify as executor and trustee, in the place of McCormick. McCormick failed to qualify, and the Fidelity & Columbia Trust Company qualified as executor and trustee.

By clause 4 of her will, testatrix devised to Mary Prudence Brashear, daughter of her nephew McCormick Brashear, the sum of $1,000, to be paid to her when she reached the age of 21 years, with other provisions contingent upon the happening of certain events, not

404

necessary to consider here, as this clause of the will is not in controversy.

Clause 5 of the will, out of which this controversy arose, reads as follows:

"Fifth—All the rest and residue of my estate of every kind and description I give and bequeath to McCormick Brashear to be held by him as Trustee for the use and benefit of Charles Duvall Bean and Elmer Hollis Bean, children of the late Arch V. Bean and Sallie D. Bean. I further direct that the Trustee may use the income from said estate as he deems best for the support of the said Charles Duvall Bean and Elmer Hollis Bean, the said Trustee Fund to be held during the natural life of the said Charles Duvall Bean and Elmer Hollis Bean.

"In case of the death of either one, then the income is to be used at the discretion of the said Trustee for the support of the survivor. In case of the death of both without living issue, then the estate shall revert to my brothers' and sisters' heirs."

The will was dated the 16th day of May, 1913. Sallie D. Bean, the mother of the named beneficiaries, Elmer H. Bean and Charles D. Bean, was a legally adopted daughter of the testatrix, Rebecca Duvall. At the time the will was written, Elmer H. Bean and Charles D. Bean were both single, but thereafter they both married. Elmer H. Bean died in October, 1935, a resident of the state of Texas, and left surviving him as his next of kin and heirs at law, his wife, Edna Kurtz Bean, and one child, Rebecca Duvall Bean, who was the plaintiff below and the appellee in this appeal. Charles D. Bean is still living and is the father of four children, all of whom were under fourteen years of age at the time this action was filed.

The Fidelity & Columbia Trust Company, as trustee, paid one-half of the income from the trust fund to each, Elmer H. Bean and Charles D. Bean, until the death of Elmer H. Bean, and thereafter the trustee paid the whole of the income of the trust fund to Charles D. Bean until September 1936, when Wilson & Muir (a bank), guardian of appellee, Rebecca Duvall Bean, filed this suit in the Nelson circuit court for a construction of the will and a declaration of the rights of the parties.

The petition set out the will and other facts, in substance, as we have indicated, and prayed that the will be construed to mean that Rebecca Duvall Bean, appellee, is entitled to one-half of the trust fund and also to one-half of the income accrued since the death of her father, Elmer H. Bean, and that the trustee be ordered and directed to turn over to the plaintiff, as guardian for its ward, Rebecca Duvall Bean, one-half of the principal of said trust fund, and that it be adjudged that at the death of Elmer H. Bean one-half of the trust fund and income therefrom descended to his child, Rebecca Duvall Bean, absolutely in fee simple, and that she is entitled to have same paid to her said guardian.

The Fidelity & Columbia Trust Company, trustee, filed its answer and cross-petition and asked for an order of court declaring the rights of respective parties and directing the trustee as to the distribution of the trust fund, both corpus and income therefrom.

W .R. Gentry, a practicing attorney of the Nelson county bar, was appointed guardian ad litem for the infant children of Charles D. Bean, and the guardian ad litem, in behalf of the infants, and Charles D. Bean in his own behalf, filed their respective answers in which they asserted that, under the terms of the will of the testatrix, Charles D. Bean was entitled to the whole of the income of the trust fund during his life, and at his death the corpus should go to and become vested in such children of Charles D. Bean and Elmer H. Bean as are living at the time of the death of Charles D. Bean, per capita.

No issue of fact was made by the pleadings, and the case was submitted to the chancellor for judgment construing the will, and the chancellor entered the following judgment:

"This cause having been submitted to the court on the pleadings, exhibits and the stipulation of facts filed herein and the court being advised, it is adjudged that the plaintiff, Rebecca Duvall Bean, is entitled to the relief prayed for and that she, Rebecca Duvall Bean, was entitled to a one-half (½) interest at the death of her father, Elmer Hollis Bean, in and to the Trust Fund or Funds in the hands of the Trustee, The Fidelity & Columbia Trust Company of Louisville, Kentucky, held by

said company under and by virtue of paragraph 5 of the will of Rebecca Duvall, and it is further adjudged by the court that the said Fidelity & Columbia Trust Company turn over or pay to Wilson & Muir, Guardian of Rebecca Duvall Bean, one-half (½) of said Trust Funds together with one-half (½) of the accumulated income thereon since the death of Elmer Hollis Bean, subject, however, to the payment of costs and fees, to the said Guardian, Wilson & Muir, and the said Fidelity & Columbia Trust Company will retain the other one half (½) of said Trust Fund in its hands and pay the income thereof on same to Charles Duvall Bean during his natural life and at the death of Charles Duvall Bean, and the said Trustee will pay said one-half (½) to the living issue of Charles Duvall Bean, if any.''

The guardian ad litem for the infant children of Charles D. Bean and Charles D. Bean excepted to the judgment and prayed an appeal to this court, which was granted.

It is to be noticed that the fifth clause of the will is composed of two literary paragraphs. The last part of the first paragraph and the whole of the last paragraph are the particular parts in dispute.

It is the contention of appellants that the last part of the first paragraph, stating that ''said trust fund to be held during the natural life of the said Charles D. Bean and Elmer H. Bean,'' and the last sentence in the last paragraph, stating that, ''In case of the death of both without living issue, then the estate shall revert to my brothers' and sisters' heirs,'' show that it was testatrix' intention that the entire corpus shall be held in trust until both beneficiaries are dead. And the first sentence of the last paragraph stating that, ''In case of the death of either one, then the income is to be used at the discretion of said Trustee for the support of the survivor,'' clearly shows that Charles D. Bean is entitled to the whole income during his life.

It will be noticed that testatrix did not expressly provide what would become of the corpus of the trust fund in case both beneficiaries died with living issue, but merely provided that, in case of the death of both without living issue, the estate shall revert to her brothers' and sisters' heirs.

It is conceded, however, by both parties, that by implication testatrix intended that the corpus of the trust fund would vest in the surviving issue of the beneficiaries. Vittitow v. Keene, 265 Ky. 66, 95 S. W. (2d) 1083, 1085; Renaker v. Tanner, 260 Ky. 281, 83 S. W. (2d) 54. There is no dispute between the parties except (a) as to the time Rebecca Duvall Bean shall share in the estate, and (b) whether in the end a per capita or per stirpes distribution of the corpus shall be made. (a) It is at once apparent that the will of testatrix is ambiguous and either construction contended for by the opposing parties is by implication or inferences.

'It is not clear from the precise language used whether testatrix meant that in case of the death of either beneficiary the survivor should take the whole income, provided the deceased beneficiary left no issue; or whether the survivor should take the whole income to the exclusion of any issue the deceased beneficiary may leave. Nor is it clear whether it was the intention of testatrix that the corpus shall not vest until after the death of both beneficiaries; or whether the share of the one who might predecease the other shall immediately vest in the living issue, if any, of the deceased beneficiary.

It is the established rule that in construing wills the instrument will not be construed per pacella, but by the entirety, and, in arriving at the intention of the testator, the relation of the testator to his bounty and all the circumstances will be taken in consideration as well as the exact language used in the instrument.

When testatrix wrote her will, Charles D. Bean and Elmer H. Bean, the named beneficiaries, were both single and had no children, and it appears that testatrix was endeavoring to provide for the two boys and their issue and, no doubt, she looked upon both of these boys and their future issue, if any they should have, with the same degree of favor. There is nothing in the will either expressed or by necessary implication tending to indicate that testatrix was any more solicitous of the welfare of one of these boys than the other, or the issue of either. If the will should be construed as contended by appellants, it would result in a partial disherison and an unequal distribution of testatrix' estate. It is the established rule of construction of wills that complete testacy, equality of distribution, and nondisherison are

favored and will prevail unless a contrary intention clearly appears. Shackelford v. Kauffman, 263 Ky. 676, 93 S. W. (2d) 15.

Appellants rest their case upon the last paragraph of the fifth clause of the will providing that, in case of the death of either one, the income is to be used for the support of the survivor; and, in case of the death of both without living issue, the estate shall revert to testatrix' brothers' and sisters' heirs.

In the case of Newland et al. v. Louisville & N. R. Co. (Ky.) 116 S. W. 328, 329, the following paragraph of William Whitley's will was construed:

"I give to my grand daughters, Sarah Eliza and Mary Frances, children of my son, John S. Whitley, deceased, the Pearl tract of land (description of which is omitted). Also a negro woman worth five hundred and her increase. If either of these two grand children dies, the survivor to have all. Should both die without issue the whole to fall back to my heirs."

In construing that will the court said:

"It will be observed that the testator contemplated that the estate should revert to his heirs only in the event that both of his granddaughters should die without issue. This did not occur. Sarah Eliza Whitley married Horace A. Hutcheson, and had one child, William S. Hutcheson, who survived his mother. Immediately upon the death of his mother, he became invested with the fee-simple title to an undivided one-half interest in the tract of land devised by the sixth item of Whitley's will."

In the present case the language used is "In case of the death of both without living issue." As said in the Newland Case, supra, this did not, nor cannot, occur, because Elmer H. Bean died leaving living issue.

It is to be noticed that in the last sentence of clause 5 of the will testatrix recognizes the living issue of the beneficiaries. It is not reasonable to suppose that she would recognize living issue in one instance and intentionally ignore it in another. In Calloway v. Calloway, 171 Ky. 366, 188 S. W. 410, 412, L. R. A. 1917A, 1210, speaking of the word "implication," the court said:

"Implication may be founded upon two

grounds: It may either arise from an elliptical form of expression, which involves and implies some-- thing else as contemplated by the person using the expression; or the implication may be founded upon the form of gift, or upon a direction to do something which cannot be carried into effect without of necessity involving something else, * * * which is a consequence necessarily resulting from that direction.''

See, also, Chinn v. Respass, 1 T. B. Mon. [25] 27.

"With regard to the expression 'necessary implication,' Lord Eldon, in Wilkinson v. Adam, 1 Ves. & B. 422, said:

" 'In construing a will, conjecture must not be taken for implication; but necessary implication means, not natural necessity, but so strong a probability of intention that an intention contrary to that which is imputed to the testator cannot be supposed.' * * *

"In the final analysis, however, it is upon the principle of carrying into effect the supposed intention of the testator that all the cases of devise by implication rest. If the language employed by the testator cannot reasonably be accounted for, except upon the supposition that he intended to make a certain disposition, but, through lack of learning, want of advice, inadvertence, or mistake, failed to use the legal or proper phrases, the courts will carry into effect the intention so shown by implying such disposition, unless that disposition would contravene some well-established legal rule. Connor v. Gardner, 230 Ill. 258, 82 N. E. 640, 15 L. R. A. (N. S.) 73, and note.''

It is our view that the words, ''in case of the death of either one'' by necessary implication mean ''in case of the death of either one without issue.''

In view of the will as a whole and the attendant circumstances, it is our view that the language (appearing in the first paragraph of clause 5) directing that the trust fund be ''held during the natural life of Charles D. Bean and Elmer H. Bean'' evidently means that the fund should be held during the natural life of each but not that the whole trust fund shall be held during the

natural lives of both; or, in other words, each one's share shall be held during his life.

It appears to us by necessary implication and upon authority of the Newland Case, supra, that upon the death of Elmer H. Bean, his child, the appellee, immediately became invested with the fee-simple title to one-half of the corpus of the trust fund.

In support of appellants' contention that the corpus of the estate, after the death of the life beneficiaries, should be distributed per capita, the case of Brown's Executor v. Brown's Devisees, 6 Bush 648, is relied on. The clause of the will construed in that case reads as follows:

> "The rest and residue of my estate I will and bequeath to the descendants of my three uncles, Benjamin Brown, William Brown, and Thomas Brown. My three uncles above named are all dead, and their children or descendants are unknown to me, at least some of them. My desire is that this bequest shall go to such of their children as are living; and where a child of either has died leaving children, the children of said deceased child shall take such part as their parent would take if living."

It must not be overlooked that in the Brown Case, supra, the three uncles named by the testator were all dead and were not devisees under the will. They were never vested with anything. Had the uncles been living and made devisees under the will to the extent of a life estate or some other interest less than the fee, with remainder to their children, a different case would have been presented. The uncles were mentioned merely as descriptive of the class or the persons who were testator's next of kin and the devise was directly to that class. The court said:

> "The testator had no children, no brother, no sister: those persons were his nearest kindred, and all related to him in the same degree; so that it is to be presumed that the same reason which influenced him to provide for them would induce him to make that provision equal."

However, be this as it may, having concluded that one-half of the corpus of the trust fund immediately vested in appellee upon the death of her father, Elmer H. Bean, the income naturally follows the corpus, and

appellee is entitled to one-half of the income accrued since the death of her father, Elmer H. Bean.

The judgment of the chancellor being in harmony with our views, it is affirmed.

Whole court sitting.