# Craven v. Louisville Trust Co. et al.

Feb. 9, 1943.

Dodd & Dodd for appellant.

A. M. Marret for appellees Louisville Trust Co., Thomas Craven and Matilda Craven.

Wm. H. Crutcher, Jr., and Peter, Heyburn & Marshall for appellees John and Lewis Taylor.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

This appeal involves the construction of the will of James F. Calloway, who died in February, 1911, a resident and citizen of Louisville, Jefferson county, Kentucky. His will was duly probated in the Jefferson county court on the first day of March, 1911, and The Louisville Trust Company, which was named in the will as trustee of testator's estate, qualified as administrator of the estate and also qualified as trustee, and has been administering the trust since that date. The pertinent part of the will reads:

"1st. I desire and direct that all my just debts be paid.

"2nd. I will and bequeath to the Louisville Trust Co. as trustee for my two children Eleanor H. W. & Margaret, W. Callaway, all of my real estate- personal and all other property that I own or may own or acquire to be held in trust by the said Louisville Trust Co. for my said two children Eleanor H. W. and Margaret W. Callaway—free from any lien, control, or use in any way whatever of any husband, or husbands, they may have—I mean that their husband or husbands cannot sell mortgage convey or encumber in any way—the property held by the Louisville Trust Co. in trust for my two above named children—

"3. I mean furthermore—that none of the property of my two above named children held in trust by the Louisville Trust Co.—whether real estate or personal property shall be liable—in any way for the debts of their husband or husbands—I will and direct that the said Louisville Trust Co. shall hold in trust all of my real and personal property for the exclusive use & benefit of my two above named children Eleanor & Margaret Callaway—and their children—should they marry & have children— except same property which I mention further on— this to be sold and the proceeds to be invested in real estate or real estate bonds.—& to be held in trust by said Louisville Trust Co. as above described. I will and direct that my two children shall have share alike, that is that all of my property be equally divided between them—Should either one die without lawful issue then the other shall inherit all of my property. Should either of my above named children marry and have lawful issue—child or children and should the child or children die without lawful issue then at the death of the mother & lawful issue—the property shall revert to my other daughter—& her lawful issue—In the event of the death of both of my children without legal issue— then I will and direct that all of my property be held in trust by said Louisville Trust Co. for three years and the rents be paid to my legal heirs—viz my sister Mrs. C. J. Saunders, my two Brothers William and Augustine Callaway—and the children of

my dead sister Bettie V. Taylor—At the expiration of three years—all of the property can be sold and divided equally between my legal heirs. * * *.''

The will was dated July 23, 1896. Later testator wrote a codicil, or codicils, as follows:

"Louisville, Ky. May 13, 1907—Since writing my will my nieces Miss Bettie & Jennie Saunders have married to men who are able to take care of them & I hereby revoke the clause giving them their pro rate of my estate in their of my two daughters deeing without issue or heirs—I also hereby revoke the clause allowing my nephew Samuel Saunders from sharing in any part of my Estate in the event my two daughters die without children.

"I do this on account of his ingratitude to me in not paying me back money I spent in getting him out of serious trouble—I also hereby request & authorize my two daughters to be kind & good to, & permit my niece Miss Mollie Saunders (who has been living with me for fifteen years—& who loves my children & has been a mother to them) to have a home with them during her life which I feel sure they will do.

"Jas. F. Callaway.

"I wish my two daughters to be on friendly terms with their Aunts & Cousins on their Mothers side—but under no consideration do I wish them to visit or live with them or to marry their cousin on their mothers side—her portion of my Estate shall revert to the other—if both marry cousins on their mothers side then my Estate shall go to my relatives as described & specified above—I make this provision & request because of the bad treatment to me & the unkind things they have done & said about me. After the many acts of kindness I extended them during my wife's life.

"May 13, 1907
"Jas. F. Callaway.''

At the time the will was written testator's two daughters, Margaret and Eleanor, mentioned in the will, were small children and still single at the time the codicils were written. Margaret married John T. Craven and two children were born to her marriage, in November, 1913 and December, 1915, respectively. Eleanor, who

married L. B. Shropshire, died in September, 1920, without issue. After the death of Eleanor, Margaret received from the trustee the income from Eleanor's one-half of the estate, together with her own one-half, without any objections or questions being raised until August, 1941, when she filed this action against the Louisville Trust Company, trustee, and the collateral heirs of testator, asking for a construction of the will and a declaration of rights (sec. 639a—1 et seq., Civil Code of Practice), contending that the will should be construed to mean that upon the death of her sister Eleanor the trust terminated as to Eleanor's share and that she (Margaret) became vested with the fee simple title to Eleanor's one-half of the corpus and that she be entitled to receive the income from the other one-half for life according to the provisions of testator's will.

The trustee and certain of the other defendants (appellees) filed their answer joining in the prayer of the petition for a declaration of rights and for a construction of the will, but contending that by the death of Eleanor the trust did not terminate as to her one-half interest and that Margaret, the appellant, took the same interest in the entire corpus as she had previously held in her one-half; that is, a life estate. The court construed the will and made a declaration of rights of the parties, adjudging: "that upon the death of testator's daughter, Eleanor Calloway Shropshire, on September 25, 1920, the plaintiff, Margaret W. Calloway Craven, under and by the terms of said testator's will and codicils thereto, became and is the owner of the same beneficial interest in the entire trust estate created by said will, as she had in one-half thereof prior to the death of her sister, Eleanor Calloway Shropshire, and that upon the death of her sister, Eleanor Calloway Shropshire, said trust did not terminate as to a one-half of said trust estate and plaintiff did not take a one-half interest in said trust estate, in fee simple; * * *" Plaintiff excepted and prayed an appeal which was granted.

Counsel for appellant recognizes the familiar rule of construction of wills that the whole document must be considered and that the intention of the testator as expressed by the language of the will must prevail; and that if there are conflicting clauses in the will which render the intention of the testator doubtful, then the court will apply the rules of construction fixed by it in arriv-

ing at the intention of the testator. These rules of construction have been consistently followed by this court for a number of years and are too well known to the legal profession to require elaboration or citation of authority. It is insisted for appellant, however, that the language used by the testator in the will here involved is too plain to admit of doubt, and that the rule applied in the construction of wills containing doubtful and ambiguous language is not here applicable. It is insisted that the provisions that should either one of testator's daughters die without lawful issue then the other shall "inherit" all his property, and that if either of the daughters have lawful issue and should the child or children die without lawful issue then at the death of the mother and lawful issue the property shall "revert" to the other daughter and her lawful issue; and the language contained in the codicil providing that if either one of testator's daughters should marry a cousin on their mother's side then her portion of testator's estate shall "revert" to the other, make it plain that it was the intention of testator that in the event of the death of either one of his daughters without issue the surviving daughter would take the share of the deceased one absolutely.

We cannot agree with counsel for appellant in their contention that the isolated provisions of the will mentioned above are conclusive of the intention of the testator. If those provisions of the will constituted the whole will, counsels' argument would be more persuasive, if indeed not conclusive. We think this will is of that class of instruments which must be construed by the entirety rather than per pacella. Bean et al. v. Bean et al., 271 Ky. 403, 112 S. W. (2d) 70; Lecompte v. Davis' Ex'x et al., 285 Ky. 433, 148 S. W. (2d) 292.

The will was written entirely in the handwriting of the testator and shows a lack of knowledge of the technical meaning of legal terms. But considering the instrument in its entirety we think the intention of the testator is reasonably clear. One outstanding feature of the will, which is too plain to admit of doubt, is that he wanted his own blood to have his estate. This is clearly shown by the provision that all of his estate, personal and real, should be held in trust by the trustee for his two daughters and free from any lien or liability of their husbands and that the husbands cannot sell, mortgage, convey, or encumber in any way the property held by the trust

company for the use and benefit of his daughters. He also provided that in the event one of his daughters should marry a cousin on her mother's side her share would "revert" to the other daughter, and if both daughters married cousins on their mother's side *all* his property would go to his relatives. And testator further provided that in the event of the death of both of his daughters without legal issue *all* of his property was to be held in trust by the trustee for three years and the rents paid to his legal heirs, and at the expiration of three years all his property be sold and divided equally between his "legal heirs," meaning his blood relatives.

To construe the will to mean that in the event of either daughter's death without issue the other should take one-half in fee would result in a dower interest in the husband of the survivor. And, furthermore, it would defeat the plainly expressed intention of the testator that in the event of the death of both daughters without issue all of his property would be held in trust by the trustee for three years and the rents paid to his legal heirs and at the expiration of three years all of his property be sold and divided equally between his heirs. Another significant fact is the construction that appellant placed upon the will for a period of 21 years. Her sister died in September, 1920, and since that time she permitted the trustee to handle the entire estate without question or objections and made no effort to obtain her sister's one-half in fee as sought in this action. While this may not be a controlling factor in the decision of the case, yet it strongly indicates that appellant treated the will as meaning that upon the death of her sister she only took her sister's interest in the trust estate rather than in fee simple.

Evidently the testator did not understand the meaning of the words "inherit" and "revert" as they are commonly used in their technically legal sense. Such application or construction of these words would completely destroy the other provisions of the will which are expressed in simple language, too plain to be misunderstood. We think that testator used the words "inherit" and "revert" in the sense of the word "take"; that is, in the event that one of his daughters died without issue, or should marry a maternal cousin, the other daughter would succeed to or take the trust interest in the whole estate. We find nothing in the will indicating that it was

the intention of testator that either of his daughters would take any part of the estate in fee under any circumstances, nor that the death of either daughter, or the marriage of either one to a maternal cousin, would terminate the trust as to her share. The only provision for a termination of the trust in any part of the estate is that both daughters die without issue, or the marriage of both to a maternal cousin, and in either of those events all the estate would go to the heirs of testator, but the trust would still continue for three years thereafter, before any sale and distribution is made of the estate.

The judgment of the chancellor being in harmony with our views, it is accordingly affirmed.