## Turpin v. Scrivner.

March 3, 1944.

John W. Walker, Clarence Miller, and Ben H. Scott for appellant.
Shumate & Shumate for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

Appellee, and plaintiff below, Roy Scrivner, as administrator of the estate of his son, James William Scrivner, recovered a judgment in the Estill circuit court against appellant and defendant below, Ora Turpin, in the amount of $7,000. The action is based upon alleged negligence of defendant in operating a small truck on state highway No. 52 between Richmond and Irvine, Kentucky, on October 16, 1942, between 5 and 6 o'clock p. m. whereby an automobile in which plaintiff's decedent was riding and approaching from the rear, collided with defendant's truck in which decedent sustained his fatal injuries. In this opinion we will refer to the motor vehicle of defendant as ''the truck'' and to the one in which decedent was riding as ''the automobile,'' and will also refer to the parties as ''plaintiff'' and ''defendant'' as they appeared in the trial court.

Both vehicles were traveling north from Richmond toward Irvine and plaintiff alleged in his petition that defendant stopped his truck at a forbidden place on the highway, with some portion of it projecting over the center line of the macadamized portion of the road onto his left side, causing the automobile in which decedent was riding to collide with the rear of the truck and to fatally injure him. The answer denied the material averments of the petition, and pleaded the negligence of the driver of the automobile as being the sole cause of the collision with its fatal results; also decedent's contributory negligence. At the close of plaintiff's testimony defendant moved for a directed verdict in his favor which the court overruled with exceptions and the same motion was repeated at the close of the entire testimony with like results. The court then peremptorily instructed the jury to find for plaintiff submitting to it only the question of damages.

Defendant's motion for a new trial contained a number of grounds among which are: (1) Misconduct of counsel for plaintiff in improperly injecting into the case the fact that defendant carried indemnity insurance, (2) error of the court in peremptorily instructing

the jury to find for plaintiff, and submitting to it only the amount of damages, and (3) error in refusing instructions offered by defendant. The other grounds are more or less formal and which need not be referred to. The three we have noted will be disposed of in the order named.

1. Ground (1) is alone sufficient to compel a reversal of the judgment and it appears to have been committed in the face of a number of opinions heretofore rendered by this court, in which we strongly condemned efforts on the part of plaintiff's counsel in such cases to develop the fact that the defendant carried such insurance, and which determinations by this and other courts are based on the well known trait of human nature—possessed by jurors as well as others—to be less inclined to give the testimony the same weight as against a neighbor, acquaintance, or friend, as against insurance companies, many of which are foreign to the jurisdiction. This error here was first intentionally brought to the attention of the jury in counsel's opening statement to it wherein he said:

"The plaintiff will testify that a few days after the accident he met defendant, Turpin, on the street in Irvine, and asked the defendant if he would do anything for him, and defendant said: 'I looked in my mirror and saw no one and stopped—I have insurance, and you will have to prove me guilty before they pay it.'"

Defendant's counsel excepted to that statement and moved the court to discharge the jury which was overruled with exceptions. While his client was on the stand the same counsel interrogated him with reference to the conversation which he had with defendant some short while after the accident. That the full effect of that examination, as well as its purpose, may be appreciated we hereby insert it as it appears in the transcript of the evidence:

"Q. Did he (defendant) make any statement to you there about how the accident occurred?. A. He said he was just driving down the pike and met Mr. Witt and aimed to pick him and the boy, I believe, up. He said he looked in the mirror and didn't see anybody coming and he stopped.

"Q. Did he make any other statement in that same conversation?

"Mr. Walker: We object. A. No.

"Judge Seale: Don't lead him.

"Q. What else was said there at that time?

"Mr. Walker: We object.

"Q. If anything?

"Judge Seale: Any admission by the defendant would be competent.

"Q. What else did he say there? A. I asked him if he didn't think he ought to help me.

"Q. What did he say?

"Mr. Walker: We object.

"A. He said he had insurance to cover his losses."

In response to the objection of defendant's counsel the Judge stated: "The jury will not consider that last part of his answer, about what he said." Thereupon counsel again moved the court to discharge the jury but which was overruled. On the hearing of the motion for a new trial plaintiff's counsel who made the opening statement and who examined his client, filed his affidavit in which he stated that he "thought that it was highly necessary and beneficial to the plaintiff in properly presenting his side of the case to the jury to prove the entire statement because of the following facts." He then set forth three alleged reasons as sustaining his efforts to inform the jury of defendant's indemnity insurance, and which were: (a) That there was a prospective issue as to whether defendant stopped his truck on or off of the highway just before the collision; (b) there was also a prospective issue as to whether or not defendant gave some signals indicating his intention to stop his truck by extending his arm, &tc., which is a statutory requirement, and (c) that there was a prospective issue as to whether or not defendant stopped his truck entirely on the right side of the highway or with a portion of it extending over onto the west, or his left side. It is most difficult to see what probative effect that the fact of defendant carrying indemnity insurance could possibly have upon either of those issues.

In the case of Trevillian v. Boswell, 241 Ky. 237, 43 S. W. (2d) 715, 717, there was presented to us the same question arising under practically the same facts as appear in this record. We cited therein a great num-

ber of prior domestic cases presenting the same error and in that (Trevillian) opinion we said: "The statement of counsel and the testimony of the witness Crowder, relating to indemnity insurance, had no bearing on, and was not relevant to, any question or issue in the case. Plainly counsel intended thereby to influence unduly, and to prejudice, the minds of the jurors against the appellant and his defense. It did not and could not serve any other purpose. The statement of the appellant, as disclosed by the testimony. of Crowder, was in no way related to, and shed no light on, the issue of negligence or contributory negligence of the persons engaged in operating the vehicles at the time of the collision. No part of it was competent except the statement of the appellant that he was the owner of the truck."

That opinion was rendered on November 24, 1931. This case was tried February 12, 1943—eleven years, two months and eighteen days after the opinion referred to was rendered—which most emphatically held that the fact of carried indemnity by defendant had no bearing whatever upon the issue of defendant's negligence. On May 20, 1938, we delivered our opinion in the case of Star Furniture Co. v. Holland, 273 Ky. 617, 117 S. W. (2d) 603, 606, where an almost identical effort to convey to the jury the fact of insurance was made by plaintiff's counsel, i. e., by statement of counsel at the opening of his client's case at the beginning of the trial. The objection thereto was overruled followed by an admonition of the court, and in overruling the contention of plaintiff's counsel that the admonition sufficed to correct the error, we said:

"Whether such reference is calculated to influence jurors possessing stern and discriminating dispositions —and for which reason they should not be considered as erroneous—does not furnish the rule that has been adopted and applied in such circumstances. On the contrary, we, as well as all courts, have held that the average juror is either unconsciously or otherwise influenced by the fact that the alleged negligent actor carries insurance. Such average juror, it has been found, is frequently led astray and returns an unauthorized verdict because he concludes that the defendant against whom it is rendered will not be required to pay it out of his individual funds because of indemnity insurance carried

by him. Knowing that fact counsel representing injured plaintiffs frequently seek to get before the jury the fact of such indemnity insurance being carried by the defendant in such tort actions, and we, as well as other courts, have never failed to condemn it. In a few cases we declined to reverse the judgment for such practices, but in each instance where we did so there were qualifying facts furnishing a legal excuse for the interjection of the insurance issue complained of. In all other cases we have not hesitated to reverse the judgment containing the error, in the absence of the record showing a legitimate excuse therefor.''

To that statement is appended a long list of prior domestic cases. In the course of that opinion we quoted with approval from the case of Blue Bar Taxicab & Transfer Co. v. Hudspeth, 25 Ariz. 287, 216 P. 246, in which that court said: '' 'The consequence of such information is well known, and is sufficient to require a new trial. It is useless for counsel to talk of the innocuous character of this evidence, when they at the same time, in order to get the information before the jury, are willing to imperil any verdict which might be rendered. All lawyers know the rule in regard to such evidence, and they must not expect the court to establish a rule, and then wink at its violation.' We do not think it needs enlargement at our hands at this time.''

In the course of the Holland opinion in condemning such practice we employed this language: ''It would be difficult—even beyond the power of overcoming—to conclude that such reference to the question of insurance did not have the desired effect to give the case an 'insurance' coating, and to sprinkle it with an 'insurance,' perfume—all of which we have said in numerous cases was calculated to influence the jury in arriving at its verdict, both upon the issue of culpable negligence, as well as the amount of remuneration.''

It might be further added to what was said in that opinion that the effect of bringing to the knowledge of the jury the fact of defendant's indemnity against such accidents permeates the case as thoroughly and completely as dissolved sugar in hot liquid, and cannot be more easily separated or eradicated. But it is argued that even so the error was not prejudicial since as contended defendant stopped his truck with a portion of it extending over onto the left side of the road, which (as

is also contended) was per se negligence on his part. However, in making that statement counsel for plaintiff overlooks the fact that there was, as we appraise the testimony, preponderating proof that defendant stopped his truck entirely on his right side of the road, which, if true, he violated no statutory rule in doing so, as subsection 4 of section 2739g-48, 1939 Supplement to Carroll's Kentucky Statutes, 189.450 KRS, clearly demonstrates. That subsection is a part of a statute enacted in 1938 amending the prior one relating to the same subject of stopping automobiles on the highway. The amendment prescribed, inter alia, designated places where it would be unlawful to stop motor vehicles on the macadamized surface of highways at certain points, none of which applied to defendant in this case, except place "e" which says: "At any other point except on the righthand side where the point is less than 150 feet from the brow of a hill or where the view is otherwise obstructed for said distance."

The proof uncontradictedly shows in this case that defendant stopped his truck at a point with as much as or more than 500 feet of perfectly straight road to his rear and which he observed through the aid of his truck mirror before he stopped, as well as holding out his left hand. The effect upon the jury in determining whether or not any part of defendant's truck extended over on his left side of the road might easily have been influenced in weighing the testimony on that issue, by the fact that the defendant would not be improverished by any verdict that might be returned, since his indemnitor, an insurance company, would have to bear the burden of satisfying it. In view of the cited cases supra, and others found in those opinions, there is no escape from the conclusion that the injection of the erroneous and incompetent fact concerning defendant's indemnity insurance was prejudically erroneous and for which alone the motion for a new trial should have been sustained.

2. We have seen that under the provisions of the 1938 amendment to the section supra, of our statute, defendant stopped his truck at a point in the road not forbidden by any of the statutory provisions, since there was more than 150 feet of unobstructed road in his rear wherein there was no hindrance to the view of the driver of an approaching automobile traveling in the

same direction. We have also seen that the preponderance of evidence shows that defendant stopped his truck entirely on his (the right) side of the road. But notwithstanding such testimony the court peremptorily instructed the jury to find that defendant was negligent in stopping his truck partly on the left side of the highway and as a proximate result thereof he was liable for whatever damages the estate of decedent sustained by reason of his death. It requires no argument to show that the peremptory instruction was clearly erroneous and equally prejudicial. On the contrary, if plaintiff's liability should have been submitted at all, it should have been confined to the one fact of, whether or not any material part of defendant's truck when it came to rest extended beyond his (the right) side of the highway over on its left side, since the only negligence, according to the undisputed proof that could possibly be attributed to him, was that of bringing his truck to a stop with some material portion of it extending over and beyond the middle of the highway upon which he was traveling.

The reason for defendant's stopping at that place was that he had left his home about 750 yards from the place of the accident with his wife and child to obtain some groceries for the use of the family, and he discovered one of his employees at a sawmill which he operated, walking in the same direction on his left side of the road, when he momentarily stopped to pick up his employee, and a little boy who was traveling with him. He had not stopped exceeding a minute, or half a minute, when the automobile came up from the rear with six passengers and the driver—who was its owner—and collided with the rear flat or bed of his truck, which some of the witnesses claim projected over across the righthand side of the middle of the road some six, seven or possibly eight inches, the only alleged projected portion being the rear lefthand corner of the bed against which the approaching automobile collided with its resulting effect.

The proof is also undisputed, as well as admitted, that the driver of the automobile, one Arthur Riddell, and his six companions were laborers in some governmental war plant located some few miles north of Richmond. They were traveling under an arrangement whereby the other laborers besides Riddell each paid him fifty cents per day to ride in his automobile to and from

their work. Some 150 feet or slightly more, behind the place of collision, a dog ran into the road in front of the automobile and Riddell ran over and killed it, but did not stop. Riddell stated that about the time he discovered the dog (150 or more feet from the truck) he also discovered it in front of him, but he claims that he thought it was moving. He further stated that he could have stopped his automobile before hitting the dog within 25 feet at the speed it was then traveling, which he said was about 30 miles per hour. But notwithstanding he reduced his speed after hitting the dog and after discovering defendant's truck ahead of him, he continued to move at the speed of at least 25 miles per hour until he got within about 35 feet of the truck when he claims to have then discovered that it was stationary and not moving. He then had at least 35 feet within which to stop his automobile with his brakes which he said were in good working condition.

Notwithstanding such undisputed facts, it is seriously argued by plaintiff's counsel that Riddell was not guilty of any negligence at all, much less was his negligence the sole cause of the injury. On the theory that there was no joint enterprise whereby Riddell's negligence could be imputed to the decedent, it is contended that howsoever gross the negligence of Riddell might be, defendant would still be liable upon the ground that his negligence in stopping his truck with some slight portion of it beyond the center of the road onto its left side was, at least, a remote cause of the collision producing decedent's death.

But, even if it were true that defendant was negligent in the slight respect indicated, his negligence was clearly not the proximate cause of the collision as is clearly shown by the cases cited on page 798 of volume 34 of the Permanent Edition of volume 34 Words and Phrases under the subtitle of, Conditions created by original act. The original act in this case was defendant's negligence, if any, but the condition was plainly observable by Riddell, the driver of the automobile, and the others in his car, or could have been observed long before he reached the point where the truck was stopped. It was then his duty to operate his automobile, in view of such conditions, by exercising the requisite care to prevent an accident and consequent injury and damage. More than two columns of cases are cited, begin-

ning on the page of the publication referred to, to the effect that "where one cause merely created the condition, and after the condition had been created an intervening agency produced the injury, the first cause is not the 'proximate cause.'" That excerpt is taken from the opinion of Garrett v. Louisville & N. R. Co., 196 Ala. 52, 70 So. 685. There are thirteen other cases cited under the same heading and to the same effect in support of that statement. But the general rule is that a proximate cause is not necessarily the sole cause, although under some circumstances courts have held that an overwhelmingly established intervening and proximate cause may under some conditions be the sole cause. At any rate the question was a submittable one for the jury in this case, and in view of the fact that the judgment must be reversed and another trial be had, we will not determine in this opinion whether Riddell's negligence in this case, though undoubtedly the proximate cause of the collision between his automobile and the standing truck, was also the sole cause, and that question is reserved, since the evidence at another trial, if one be had, may present materially different facts.

3. After the court overruled defendant's motion at the close of all the evidence his counsel offered instructions A, B, C, D, E, and F, to which plaintiff's counsel objected and their objections were sustained and the court declined to give either of them.

Instruction A as drafted and offered, applies in the abstract to only a case wherethe plaintiff personally as driver and operator seeks recovery of damages and where defendant charges him with contributory negligence, and does not apply as against a passenger in his automobile to whom the driver's negligence is not imputable and where the latter is not himself guilty of contributory negligence.

Instruction B submitted the issue of contributory negligence on the part of the deceased for which in this case there was some supporting evidence, since it was clearly shown that all of the occupants of the automobile in approaching the defendant's truck were engaged in eating ice cream, drinking soft drinks, singing of songs and otherwise demeaning themselves at the expense of exercising due and proper care for their own safety in the circumstances by objecting to recklessness on the

part of Riddell and endeavoring to overcome it, if the jury found such to be true.

Instruction C defined the duty of the defendant as hereinbefore outlined. We therefore conclude that the issues in each of the instructions A, B, and C should be appropriately submitted to the jury, together with one authorizing a nine-member verdict and one defining ordinary care.

Wherefore, for the reasons stated, the judgment is reversed with directions to set it aside and for proceedings consistent with this opinion.