## Gatliff Coal Co. v. Broyles' Adm'x.

May 12, 1944

Tye & Siler for appellant.

R. L. Pope, C. B. Upton and J. Grady O'Hara for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

Garrett Broyles, 43 years of age, on March 23, 1943, was and had been for five years or more an employee of appellant, and defendant below, Gatliff Coal Company, in one of its coal mining operations in Whitley County as a motorman. Before that he worked in the same mine as an electrician. Prior to that day there had been made within the mine certain entries, three of which are involved in this litigation, they being first entry, 10 left entry and 2½ main entry, the latter appearing on the map to run between the outside entry into the mine, to the tipple, and for illustrative purposes we will say that it runs east and west, the east end being at the mouth of the mine and the tipple located at the west end. About midway the length of 2½ main 10 left entry intersects it from a northeastern direction, and first left entry intersects 10 left entry from a northwest direction about 400 feet from where 10 left enters 2½ main.

Each of the aforesaid entries have mine tracks laid

in them upon which coal cars run into and out of the mine. In the early forenoon of the day above mentioned the decedent, Broyles, and his coupler, George Moore, were instructed to move a conveyor from a room in the mine just off first left entry down to the point where 10 left intersects 2½ main, from which point another motorman had been instructed to carry it over 2½ main to Roses Creek, which, as we have said, appears to be the entry into the mine. The conveyor seems to have been an implement sometimes necessary to be employed in the operation of a coal mine, it weighing between 2,500 and 3,000 pounds. It appears, as best we can gather from the evidence, to have been a metallic trough-like concern sometimes employed by loaders of coal from the room from which it was extracted into the cars which conveyed it out to the tipple. The conveyor was considerably longer than the usual length of mining cars, or vehicles traversing the tracks laid within the mine, and in moving it there was an extension from each end of the vehicle upon which it was placed for that purpose. The vehicle or instrumentality in this case was what is known as a "slide or sled" which consisted of a flat piece of iron or steel with no bannisters on the side and at the four corners of which a portion of the arc of a rolling wheel had been securely fastened so as to fit the tracks in the mine, and, of course, while moving, they slid on the rails. It is shown in the evidence not only that such a contrivance so made and operated for the purpose of handling heavy machinery was in more or less general use among miners, and that it was a more feasible and safer way to carry such implements as the conveyor than to place it on a car with rolling wheels, since it would be much safer to handle while passing all portions of the entry and rounding curves as well as more steadily moved, since by sliding on the rails it would neither move forward or backward by its own momentum which it would do if transported upon revolving wheels.

Broyles with his motor, accompanied by his coupler, George Moore, transported the conveyor, as so loaded on the slide or sled, to the point where the track in 10 left entry, joined the track in 2½ main. En route he passed over the frog where first left entry entered 10 left, and the frog where the latter entry entered 2½ main. At that point he uncoupled his motor from the

slide or sled and pulled it forward to a distance of between 15 or 40 feet, according to the various witnesses, to a place where the entry on 2½ main was wide enough for him to turn his trolley pole attached to his motor preparatory to making a return trip on the same track over which he had transported the conveyor where he expected to handle some coal cars.

Marion King was a motorman of experience, and he had driven his motor along 2½ main to the left or east from the switch and frog where Broyles had uncoupled his motor. King was expected to then hook onto the sled upon which the conveyor was loaded and carry it east over 2½ main to the mine entry. King's motor was almost immediately hooked onto the load for the purpose of carrying it out of the mine as indicated. He moved it some eight or ten feet when for some cause his movement stopped. He then moved forward a short distance to take up the slack (there being a coal car in front of his motor to which the sled had been attached at that end) and then made a jerk with his motor, perhaps, the second time, when the obstruction to the movement, whatever it may have been, was overcome, and his motor, the car in front of it and the sled was then on the track and pulled forward, but before the track leading up 10 left entry was cleared Broyles with his motor came back and collided with the projecting end of the conveyor on the sled with sufficient force to injure him, from the effects of which he died in about a month thereafter.

This action was brought by his administratrix, his daughter, against appellant to recover damages to his estate for the destruction of his power to earn money. The petition alleged as actionable negligence on the part of defendant "that said car was defective, dangerous and insufficient and equipped with wheels which would not turn but would only slide on the rails and which would not pass through or over switches without stalling; and said coal conveyor had been, by employees of defendant other than said Broyles, negligently, carelessly, dangerously and improperly loaded and placed on said car, and the tracks and switches over which said car and conveyor were being transported, and other equipment and appliances and places used in connection therewith, were unsafe, insufficient, dangerous and unsuitable for the transportation or

movement of said car and conveyor, and said car and conveyor were then and there being negligently, carelessly and improperly managed, controlled and operated by employees of the defendant other than said Broyles.'' It was then alleged that decedent sustained his injuries. ''as a direct and proximate result'' of the charged negligence as above set forth. It was furthermore alleged in the petition that the alleged acts of negligence were not known by Broyles nor could have been known by him in the exercise of ordinary care. All of the material allegations of the petition were denied, except the appointment of plaintiff as administratrix of her father and the corporate organization of the defendant, and, the one that it was not operating under the Workmen's Compensation Act, and that the decedent was one of its employees in its mining operations. Upon trial the jury under the instructions of the court returned a verdict in favor of plaintiff in the sum of $6,000 upon which judgment was rendered after defendant's motion for a new trial was overruled, and from which this appeal is prosecuted.

It is admitted (and which the statute, section 342.410 KRS prescribes) that an employer eligible to operate under our Workmen's Compensation Act who had not accepted it may not avail himself of contributory negligence of an injured employee in an action brought by the latter against him or it for the negligent infliction of injuries to the employee. But we have held in an unbroken line of opinions since the enactment of our Workmen's Compensation statute that before an injured servant may maintain an action against his employer who has not accepted the provisions of the Act, he must prove that the negligence of the master was the proximate cause of his injury. Two late cases in which that was held, and in which prior ones are cited, are: Ward v. Marshall, 293 Ky. 18, 168 S. W. (2d) 348, and Harlan Central Coal Co. v. Gemmeno's Adm'r, 296 Ky. 828, 178 S. W. (2d) 217. In the Ward case, and on page 21 of 293 Ky., 168 S. W. (2d) on page 350, of the cited volume, the opinion says:

''The employee is still required to allege and prove, however, that the negligence of his employer was the proximate cause of his injury. Nugent Sand Co. v. Howard, supra (227 Ky. 91, 11 S. W. (2d) 985) * * *. But the employer is not denied the opportunity of bringing forth

evidence to show an absence of negligence on his part and also evidence to the effect that the employee's own (sole) negligence caused his injury." (Our parenthesis).

In the opinion in the Harlan Central Coal Co. case relating to the same requirement of plaintiff under similar condition, we said (296 Ky. 828, 178 S. W. (2d) 220):

"Where the operation by a concern eligible to take advantage of the compensation law, but fails to do so it is deprived of the usual common law defenses, nevertheless it is incumbent upon the injured employee to allege and prove that the master's negligence was the proximate cause of the injury before he is entitled to take his cause to the jury. Helton case supra, and Ward v. Marshall, 293 Ky. 18, 168 S. W. (2d) 348, 349."

The alleged negligence of defendant as argued in briefs of counsel are: (1) that the sliding arc of car wheels at the four corners of the sled had become somewhat worn by sliding upon the rails of the mine track so as to form a slight flange on the outside of the portion of the wheel so employed in its stationary condition, and that such outside flange hung when it came in contact with the frog over which Broyles had brought his load and uncoupled therefrom and moved forward, or that it hung on a rail point of the switch when King attempted to take out the same load to the mouth of the mine over the track on 2½ main, and (2) that the agents or servants of defendant who were present negligently failed to notify Broyles, after he made the turn of his trolley pole and before he started to move it backward, that the load which he had left had not been removed so as to give him a clear track in 10 left along which he intended to make his return trip. No witness attempted to state positively as to what produced the hang, or the momentary stoppage of the movement by King of the load which Broyles had deposited at that point when he first attempted to do so. The most that anyone present, or throughout the trial, said upon the subject is that "I figure" that there was a hang in the movement of the sled because of its sliding runners not immediately passing over the frog when King first attempted his movement. But the testimony shows that the entire time between the uncoupling of Broyles' motor from the load he had brought to and deposited at that point, and the time that the temporary obstruction first

experienced by King was overcome, was only about a minute or a minute and a half, during which Broyles had gone to the spot where he could and did turn his trolley pole and had put his motor in motion whereby he ran it into the projecting conveyor, resulting in his receiving his fatal injuries.

Indeed there is evidence, which is undisputed, that if there had been no obstruction to the movement of the load by King, the projecting part of the conveyor would not have cleared the track that Broyles intended to take on his return trip in time to avoid the collision; but that the accident would have happened had there been no hang or obstruction of any kind which, as we have seen, was but momentary and which is so stated by some witnesses. With reference to ground (2) the proof shows that when the movement by King was first attempted, and it became stopped, those present, including the mine superintendent, immediately began to investigate to discover the cause thereof; but before they made any discovery King had succeeded in causing the conveyor—with the vehicle upon which it was loaded—to move forward, thus overcoming whatever the obstruction may have been.

In arguing that the worn flanges, to which we have made reference, caused the momentary obstruction of the movement attempted to be made by King was the proximate cause of the injury, it should be taken into consideration that no testimony was adduced to prove that there was an unnecessary delay in clearing the track for Broyles' return trip up 10 left. Suppose, for illustration, that there had never been any hanging or obstruction to the movement of the load which King had hooked onto, and that he was momentarily delayed from any cause from immediately or instantaneously coupling to it, could it then be said that it was negligence in failing to exercise lightning speed in the performance of his task to carry the conveyor and the vehicle upon which it rested to the mouth of the mine? It should also be remembered that the obstruction of the cleared track for Broyles to travel on his return trip, was one which he had produced by leaving his load at that place wherein it created such obstruction. He uncoupled therefrom and ran forward to a sufficiently wide place where he could turn his trolley pole and immediately started back toward the load from which he had uncoupled and which he

knew then obstructed his intended return trip. Therefore, the case is unlike one where a dangerous condition had been created by someone other than the injured individual, and which condition could easily be observed and its dangerous effects avoided by him but whose failure to avoid it injured him, which was one of the questions involved in the recent case of Turpin v. Scrivner's Adm'r, 297 Ky., 365, 178 S. W. (2d) 971. In that case the question of sole negligence was involved, and we broadly intimated that where the driver of an automobile with knowledge of a negligently created condition in front of him so handled his vehicle as to encounter the danger, when it could have been avoided by the exercise of ordinary care on his part would constitute the sole negligence causing any injury that might be produced thereby, and neither he nor others in his car could rely on any supposed negligence of the creator of the condition. However, we did not so expressly determine but reversed the judgment upon another ground.

Nevertheless the Ward and Harlan Central Coal Co. cases, together with others cited in those opinions, hold —as we have seen—that unless plaintiff in a common law action against his employer when the latter had not accepted the Compensation Act, proved that the negligence of his master, the defendant in the action, was the proximate cause of his injury, no recovery could be had, since it is necessary to show as a fundamental principle of the law of negligence that actionable negligence must be the proximate cause of plaintiff's injury, and also that it consisted in the violation of a duty which the defendant owed to the plaintiff. There is no pretense or effort made to show here that it was the duty of defendant, appellant, in this case to forthwith and instanter move the load that Broyles brought to 2½ main after he had uncoupled his motor from it. But if there had been such proof then the moment or two lost by the hanging of the load to which King had coupled his motor, was so brief as to constitute immediate action if such had been required.

Furthermore, the proof showed that there was no insufficient or improper lighting of the mine at that point —on the contrary it is argued that there was too much light. Broyles had a light in front of his motor and there was one light from the ceiling at the point of the switch or frog, and likewise a light on King's motor,

but which was dimmed by the car in front of his motor and the conveyor and the slide upon which it was loaded in front of the car. There was no light between the projecting part of the conveyor over the track that Broyles expected to return with his motor. Everyone said that the projecting conveyor could plainly be seen by him if he had exercised any sort of care before his fatal collision as above described. Two witnesses (Moore and Reeves, the superintendent) testified that immediately following the accident and resulting injuries, decedent stated ''I was in just too big a hurry.'' There was some effort to contradict that testimony as given by Moore because he, on a former occasion in stating what the deceased said, had failed to include the above as a part of his statement; but that was attempted to be explained by Moore in a fairly satisfactory way. However, there was no effort to contradict the same testimony as given by the superintendent, Reeves, and his testimony on that point is unchallenged.

Our cases, supra, also expressly declare that an employer, though not accepting the provisions of the Workmen's Compensaion Act, was not an insurer of the life and safety of his employee, but who would nevertheless be liable in such circumstances to his employee for an injury sustained by the latter, although he may have been negligent which contributed to the sustaining of his injury, provided there was actual negligence on the part of the employer which was the proximate cause of the injury to the employee.

It should also not be forgotten that negligence, as we have above stated, is the violation of a duty which the one guilty of it owed to the one injured because of it. The employment of the deceased in this case was not in connection with the actual operation of the alleged defective sled or slide. His only connection therewith was transporting it over the tracks through the mine as occasion demanded, and which he had done on this and other occasions successfully. He uncoupled from it leaving it located at the place and in the manner we have described, and the only possible negligence that might be attributed to the defendant was the failure to remove it from that location within the time occupied by the deceased in making preparations for a return trip through 10 left entry. The argument that the lights in the immediate vicinity at the time of the accident blinded the

decedent so that he could not see the extension of the conveyor over the track that he was to take to make his departure is purely conjectural and we have found no foundation for that argument contained in the record. On the contrary, all of the testimony shows that the lights were not only sufficient in number but were shining at the time and were not so located as to create a supposed blinding effect which, we repeat, finds support exclusively in surmise and speculation. Neither was there any proof that it was the duty of any other person to give notice to the deceased of any momentary obstruction to the removal of the conveyor, and the slide upon which it rested, from the spot that decedent placed it. Indeed, there was scarcely sufficient time to have done so, since there was an immediate effort made to discover what had created the hanging or blocking of the load to which King had coupled his motor. Nevertheless, King did whistle to the deceased when he discovered just a moment before the collision that it would happen unless deceased stopped the advancing movement of his motor. However, it is not shown that the deceased heard such signal, though it was shown that it was the one usually employed in similar circumstances. Broadly speaking, and viewing the case in the light of the principle that the employer in such circumstances is not an insurer against accidents to his employee, we are compelled to conclude that the continuous advance of the deceased with his motor by which the collision was produced, resulting in his death, was the sole cause of the collision which, under our opinions, supra, required a directed verdict for defendant, but which the court overruled at the close of plaintiff's testimony and also at the close of all the testimony. Having arrived at that conclusion it is unnecessary to discuss other errors and grounds relied on in the motion for a new trial, and they are expressly reserved.

Wherefore, for the reasons stated, the judgment is reversed, with directions to sustain defendant's motion for a directed verdict if upon another trial the evidence is substantially the same, and for other proceedings not inconsistent with this opinion.

The whole Court sitting.